BROWNING, J.
 

 Mr. and Mrs. Golden appeal a final judgment finding that the plaintiff, Davey L. Woodward, Jr., in his capacity as personal representative of the Estate of Davey L. Woodward, Sr., is entitled to an “equitable lien” or “vendor’s lien” in the amount of $89,000.00 against Appellants on certain real property that is the subject of an earlier agreement between Appellants and Mr. Woodward, Sr. Finding neither a misapplication of the law nor an abuse of discretion in any of the challenged rulings, we affirm the final judgment.
 
 See Edelson v. Quinn,
 
 123 Fla. 670, 167 So. 535 (1936) (holding that where vendees, a husband and wife, received the deed to realty and took and retained possession without paying the full purchase price and without giving security for the payment thereof, a court of equity could enforce a vendor’s lien upon that part of the property the court could reach).
 

 Mr. Woodward, Sr., and Appellants signed a January 28, 2003, written “Agreement to Sell Personal Real Estate Property” (2003 Agreement) by which Mr. Woodward sold his property to Appellants, who were his next-door neighbors in Graceville, Florida. Under the express terms of the 2003 Agreement, Mr. Woodward contracted to sell his home and approximately 7.8 acres of land to Appellants for a purchase price of $109,000.00, including all interest and fees. The 2003 Agreement provided that Appellants would pay Mr. Woodward $550.00 a month for seven years (totaling $46,200.00), beginning on March 1, 2003, and ending on March 1, 2010. After the expiration of the seven-year period, Appellants would tender a balloon payment— $62,800.00, the remaining balance of the purchase price — to Mr. Woodward.
 

 Although the 2003 Agreement stated there would be a “transfer of deeds” on or before February 15, 2003, no deeds wex-e ever transferred prior to, or within a year of, that date. Significantly, the 2003 Agreement provided that in the event of Mr. Woodward’s death, Appellants would continue making payments to his estate. Also, the 2003 Agreement barred Appellants from placing any liens on the propei'ty until the full $109,000.00 purchase price
 
 *667
 
 was paid to the seller. After the execution of the 2003 Agreement, Mr. Woodward vacated the property; Appellants took possession and commenced making monthly payments in March 2003. However, after entering the 2003 Agreement, Appellants sometimes were delinquent in their monthly payments to Mr. Woodward.
 

 At Mr. Woodward’s prompting, the parties executed a written Warranty Deed to the subject property on April 2, 2004, but Appellants did not record it until mid-June 2005, ultimately at the behest of Mr. Woodward, who no longer wanted to receive the tax notices. After Mr. Woodward delivered the Warranty Deed to Appellants, they continued to make payments to him. In mid-July 2005, or about one month after recording the Warranty Deed, Appellants executed a first mortgage of $55,000.00 on the subject property. Mr. Woodward died in June 2006. In mid-September 2006, Appellants placed a $155,000.00 mortgage on the property, which was used also to satisfy the initial mortgage.
 

 After the execution of the 2003 Agreement, Mr. Woodward had become aware that Appellants were making improvements on the property. Upon further investigation, he discovered that Appellants had executed a first mortgage on the property, despite the express provision in the 2003 Agreement that the buyers would not allow any liens on the property until the full purchase price was paid to the seller. In May 2006, Mr. Woodward filed a four-count complaint against Appellants. Upon Mr. Woodward’s death a month later, Mr. Woodward, Jr., in his capacity as the personal representative of his father’s estate, was substituted as the plaintiff, and Appellants stopped making payments on the property.
 

 The complaint alleged that Appellants had taken advantage of Mr. Woodward, Sr., from their position of trust, and that the estate was still owed payments under the express terms of the 2003 Agreement. Count One of the complaint alleged an action in equity to impose a resulting trust or a constructive trust on the property because Mr. Woodward, Sr., was elderly and did not understand the ramifications of his conveyance of the property without a mortgage.
 

 Count Two, which is the only relevant claim to the issues raised in this appeal, alleged an action in equity to impose an “equitable lien” on the property based on the circumstances that Appellants held positions of trust and confidence with Mr. Woodward, who was elderly and suffering from a serious medical condition. This count alleged that Appellants currently were in default of their payments to be made to Mr. Woodward pursuant to the 2003 Agreement. The basis of the claim for an equitable lien on the property was that Mr. Woodward had deeded the property to Appellants in the good-faith belief that Appellants would continue to make monthly payments to him, and then to his estate after his death. This count alleged that the transfer of the property from Mr. Woodward to Appellants without the benefit of a mortgage, plus the cessation of payments by Appellants to Mr. Woodward, would result in “an inequitable windfall” for Appellants by the substantial value of their property without adequate remuneration to Mr. Woodward. Count Two alleged that Appellants are estopped by their actions and conduct, which constitute a “fraud,” and by their acceptance of the benefits of Mr. Woodward’s execution of a deed to the property to them and their failure to make full payments pursuant to the 2003 Agreement. This count alleged that Mr. Woodward had no adequate remedy at law.
 

 
 *668
 
 Count Three alleged an action for the equitable reformation of the Warranty Deed. The final count alleged a claim for rescission or cancellation of the Warranty Deed.
 

 In defending against Appellee’s lawsuit, Appellants asserted that in Api'il 2004, Mr. Woodward had contacted them and ex-pi'essed a desii'e to make a significant change in the terms of the 2003 Agreement. Specifically, Appellants alleged that Mr. Woodward told them that he would deed the subject property to them if they would continue to pay him $550.00 a month until his death, upon which event their payment obligations would cease altogether. According to Appellants, the basis for this change was that Mr. Woodward had fallen out with his childi'en and wanted to avoid any potential negative intei'actions between Appellants and Mr. Woodward’s childi'en after his death. Given an objection based on the statute of frauds, the trial court allowed a proffer but ultimately excluded evidence suggesting that Appellants and Mr. Woodward, Sr., had an oral agreement that significantly altered the terms and Appellants’ responsibilities under their written 2003 Agreement.
 

 In its final judgment, the trial court found no evidence either of Mr. Woodward, Sr.’s, incapacitation or of Appellants’ undue influence or fraud. However, the court concluded that Appellants had breached the 2003 Agreement with Mr. Woodward, Sr., when they mortgaged the subject property and ceased making payments on the property before satisfying the full purchase price. The court determined that the equities lay with the estate, which is entitled to an equitable lien or vendor’s lien on the property for $89,000.00, the sum due under the 2003 Agreement. The court entered a judgment in favor of Mr. Woodward’s estate as to Count Two, and judgment in favor of Appellants on the other claims. This appeal ensued.
 

 Appellants assert that the trial court erred, first, pursuant to
 
 Conidaris v. Cresswood Serv., Inc.,
 
 779 So.2d 518, 519 (Fla. 2d DCA 2000), by granting relief on a claim for a “vendor’s lien” because no such claim was either pled in the complaint or tried by the parties’ consent; second, by granting an equitable lien in the absence of a finding of Appellants’ fraud or misconduct in procuring the April 2004 Warranty Deed from Mr. Woodward, Sr.; and, third, by finding that recovery based on an “equitable lien” theory is not barred by the doctrine of merger.
 

 As to the first issue, Count Two alleged that Appellants were estopped by their actions and conduct constituting “fraud,” and that Mr. Woodward, Sr., who did not understand the ramifications of his actions, was misled by Appellants into executing the April 2004 Warranty Deed. Although the general relief requested in Count Two is an “equitable lien,” the trial court granted a “vendor’s lien” in favor of Mr. Woodward’s estate. Appellants argue that if they had received notice that Mr. Woodward, Sr., was asserting the right to a vendor’s lien, they could have presented evidence and defenses
 
 {e.g.,
 
 laches) relating to that claim.
 

 This argument is without merit. “Every complaint shall be considered to demand general relief.” Fla. R. Civ. P. 1.110(b). Thus, the court must “look to the facts alleged, the issues and proof, and not the form of the prayer for relief to determine the nature of the relief which should be granted.”
 
 Circle Finance Co. v. Peacock,
 
 399 So.2d 81, 84 (Fla. 1st DCA 1981). “[Generally, courts of equity have the fullest liberty in molding decrees to the necessity of the occasion, regardless of the prayer.”
 
 Singer v. Tobin,
 
 201 So.2d 799, 800-01 (Fla. 3d DCA 1967).
 

 
 *669
 
 An “equitable lien” is “[a] right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund or property.”
 
 Black’s Law Dictionary
 
 942 (8th ed. 2004);
 
 see Jones v. Carpenter,
 
 90 Fla. 407, 106 So. 127, 128-29 (1925);
 
 Jennings v. Beeman Inv. Co.,
 
 177 So.2d 66, 68 (Fla. 2d DCA 1965). “Equitable liens become necessary on account of the absence of similar remedies at law.”
 
 Jones,
 
 106 So. at 128-29;
 
 see Tucker v. Prevatt Builders, Inc.,
 
 116 So.2d 437, 439 (Fla. 1st DCA 1959). A “vendor’s lien,” also known as a “grantor’s lien,” is “a creature of equity, a lien implied to belong to a vendor for the unpaid purchase price of land, where he has not taken any other lien or security beyond the personal obligation of the purchaser.”
 
 Special Tax Sch. Dist. No. 1 of Orange County v. Hill-man,
 
 131 Fla. 725, 179 So. 805, 809 (1938); see
 
 Bowen v. Grace,
 
 64 Fla. 28, 59 So. 563, 564 (1912);
 
 McKinnon v. Johnson,
 
 54 Fla. 538, 45 So. 451, 452 (1907);
 
 Rems v. Williamson,
 
 51 Fla. 529, 41 So. 449, 450-51 (1906). “The lien does not result from agreement, but is given by implication of law, as an incident to the debt, and is enforceable in equity where the vendor is entitled to it.”
 
 Hillman,
 
 179 So. at 809. Florida courts have recognized that “a vendor’s lien is merely a particular form of equitable lien which has long been recognized.”
 
 Id.
 
 at 810;
 
 see also Lake Placid Holding Co. v. Paparone,
 
 508 So.2d 372, 377 (Fla. 2d DCA 1987);
 
 Oliver v. Mercal-di,
 
 103 So.2d 665, 668 (Fla. 2d DCA 1958).
 

 Appellants concede that a vendor’s lien often is considered a type of equitable lien, and that Florida courts have used the terms “vendor’s,” “equitable,” and “grant- or’s” interchangeably to describe identical or very similar types of liens on real property.
 
 See Paparone,
 
 508 So.2d at 377. Given the Florida courts’ recognition that a “vendor’s lien” is one type of “equitable lien,”
 
 id.,
 
 we conclude that, in the context of his specific pleadings in Count Two of the complaint, Mr. Woodward’s request for an “equitable lien” upon the property reasonably should have put Appellants on notice that a “vendor’s lien” was being requested.
 
 See Moorhead v. Moorhead,
 
 159 Fla. 470, 31 So.2d 867, 868 (1947) (stating that “the character of a pleading is to be determined by its contents”);
 
 Peacock,
 
 399 So.2d at 84. Thus, the trial court did not rule in Appellee’s favor on an issue that had not been adequately pled and litigated.
 

 In their second issue, Appellants assert that the trial court erred in granting an equitable lien in favor of Mr. Woodward’s estate without a finding of Appellants’ fraud or misconduct. In
 
 Rinker Materials Corporation v. Palmer First National Bank & Trust Company of Sarasota,
 
 361 So.2d 156 (Fla.1978), the Supreme Court of Florida held that “a party may successfully maintain a suit under the theory of equitable estoppel only where there is proof of fraud, misrepresentation, or other affirmative deception.”
 
 Id.
 
 at 159;
 
 see also Armetta v. Clevetrust Realty Inv.,
 
 384 So.2d 55, 56 (Fla. 4th DCA 1980). Appellants argue that because the trial court found no basis for the allegations of fraud or misconduct by Appellants, no legal basis was proven for an equitable lien.
 

 The deficiency in this argument is that Count Two did not seek an equitable lien based on equitable estoppel; rather, the claim is based on unjust enrichment. “[T]he doctrine [of unjust enrichment] is a recognition that a person is accountable to another on the ground that if the former were not required to do so, he would unjustly benefit, or the other would unjustly suffer loss.”
 
 Peacock,
 
 399 So.2d at 84. Thus, “[t]he basis of equitable liens may be estoppel or unjust enrichment.”
 
 Plotch v. Gregory,
 
 463 So.2d
 
 *670
 
 432, 436 n. 1 (Fla. 4th DCA 1985);
 
 see also Torres v. Reimondez,
 
 979 So.2d 1074 (Fla. 3d DCA 2008);
 
 Spridgeon v. Spridgeon,
 
 779 So.2d 501, 502 (Fla. 2d DCA 2000);
 
 Gordon v. Flamingo Holding P’ship,
 
 624 So.2d 294, 297 (Fla. 3d DCA 1993);
 
 Blumin v. Ellis,
 
 186 So.2d 286, 294 (Fla. 2d DCA 1966) (recognizing that an equitable lien rests on the “maxim that equity will deem as done that which ought to have been done”). “In Florida, an equitable lien is an appropriate remedy to prevent unjust enrichment between family members or those with close personal relationships.”
 
 Della Ratta v. Della Ratta,
 
 927 So.2d 1055, 1059 (Fla. 4th DCA 2006);
 
 see also Sonneman v. Tuszynski,
 
 139 Fla. 824, 191 So. 18 (1939) (concluding that plaintiff was entitled to an equitable lien on defendant’s real property for money plaintiff had advanced to defendant and for her labor and services performed, where plaintiff acted as defendant’s housekeeper and rendered services to defendant under an agreement that defendant would support plaintiff during plaintiffs lifetime).
 

 To state a cause of action based on unjust enrichment to justify the imposition of an equitable lien, Appellee had to meet the following requirements:
 

 To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.
 

 Della Ratta,
 
 927 So.2d at 1059;
 
 see also Hillman Constr. Corp. v. Wainer,
 
 636 So.2d 576, 577 (Fla. 4th DCA 1994). “An action for ‘unjust enrichment’ exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity.”
 
 Henry M. Butler, Inc. v. Trizec Prop., Inc.,
 
 524 So.2d 710, 711 (Fla. 2d DCA 1988). The trial court found that the requirements of unjust enrichment were satisfied based on the sale of the home and acreage to Appellants for $109,000.00 and Appellants’ knowledge and receipt of the benefit, in that they entered the 2003 Agreement and moved into the home on the real property. The trial court recognized that it would be inequitable to allow Appellants to receive the benefit for $89,000.00 less than the agreed-upon price.
 

 Appellants have misplaced their reliance upon
 
 Rinker Materials
 
 and other “equitable estoppel” decisions to assert that it was reversible error, under the instant facts, to impose an equitable lien upon the real property without proof of Appellants’ fraud or misconduct, for Florida courts have long held that unjust enrichment is a different ground for imposing an equitable lien.
 
 See Spridgeon,
 
 779 So.2d at 502;
 
 Plotch,
 
 463 So.2d at 436 n. 1;
 
 Peacock,
 
 399 So.2d at 84. Competent substantial evidence supports the trial court’s finding that, because it would be inequitable to allow Appellants to retain the property without paying a substantial amount of the agreed-upon price, Mr. Woodward’s estate is entitled to the equitable relief granted. Appellants have not shown an abuse of discretion in the decision to place a vendor’s lien on the subject property.
 
 See Randazzo v. Randazzo,
 
 980 So.2d 1210, 1213 (Fla. 3d DCA 2008) (finding no abuse of discretion in trial court’s imposing an equitable lien).
 

 Appellants’ final argument is that the 2003 Agreement merged with or was subsumed into the 2004 Warranty Deed, thereby precluding Appellee from recovering under an “equitable lien” theo
 
 *671
 
 ry based on Appellants’ having breached the terms of the 2003 Agreement. “The general rule is that all preliminary agreements and understandings relative to the sale of land usually merge into the deed of conveyance.”
 
 Opler v. Wynne,
 
 402 So.2d 1309, 1311 (Fla. 3d DCA 1981); see
 
 Rubell v. Finkelstein,
 
 679 So.2d 889 (Fla. 3d DCA 1996). However, this rule is not absolute.
 

 The rule that acceptance of a deed tendered in performance of a contract to convey land merges or extinguishes the covenants and stipulations contained in the contract does not apply to those provisions of the antecedent contract which the parties do not intend to be incorporated in the deed, or which are not necessarily performed or satisfied by the execution and delivery of the stipulated conveyance. Contractual provisions as to considerations to be paid by the purchaser are ordinarily not merged in the deed and, accordingly, evidence of such contractual provisions is admissible to show what consideration is to be paid by the purchaser although a deed has been accepted.
 

 Milu, Inc. v. Duke,
 
 204 So.2d 31, 33 (Fla. 3d DCA 1967);
 
 see Rubell,
 
 679 So.2d at 889. “There can be no merger at law, without a union of titles in the same person; nor, in equity unless, also, there is an express or presumed intention on the part of those concerned in the transaction that it should operate as a merger.”
 
 Polk Bond & Mortgage Co. v. Dwiggins,
 
 109 Fla. 443, 147 So. 855, 857 (1933). That is, one must look at the intent and conduct of the parties.
 

 In the instant case, competent substantial evidence, which the trial court accepted, indicated that the pax-ties never intended or expected the 2004 Warranty Deed to supersede the compensation provisions set forth in the 2003 Agreement. First, Mrs. Golden testified that the deed was in Appellants’ possession for over a yeax-, during which they did not record it. The Warranty Deed was x-ecorded only after Mr. Woodward, Sr., advised Appellants that it had to be recorded because “there’s something to the tax bill.” When they went to record the Warranty Deed, Appellants told an employee at the recording office that Appellants had to continue paying $550.00 a month for a certain time, after which they would have to make a balloon payment. Evidence was adduced that Appellants contacted the recording office after the death of Mr. Woodward, Sr., to ascertain where the continuing payments on the property should be made. This cumulative evidence, along with the language in the 2003 Agreement and 2004 Warranty Deed, supports the conclusion that the obligations under the 2003 Agreement were intended to remain binding and did so, and that Appellants knew about their continuing obligation to make payments to the estate after Mr. Woodward, Sr., died.
 

 Given these facts in the record, the trial court had a proper basis to conclude that Appellants have a continuing obligation to make payments after Mr. Woodward, Sr.’s, death, and that the 2004 Warranty Deed did not merge with the 2003 Agreement so as to terminate Appellants’ obligations to continue making payments upon the death of Mr. Woodward, Sr. Thus, the doctrine of merger does not preclude the imposition of an equitable lien on the subject property-
 

 For all these reasons, we conclude that Appellants have not proven any reversible error in the trial court’s rulings granting a vendor’s lien in favor of Mr. Woodward’s estate. Accordingly, we AFFIRM the final judgment.
 

 HAWKES, C.J., and VAN NORTWICK, J., concur.